No. 47,027

DIANA L. BEARDSLEY, Executor of the Estate of Leslie B. Warren, Deceased, *Appellant*, v. JOAN L. WEBER, *Appellee*.

(516 P. 2d 936)

Opinion filed December 8, 1973.

*Albert Kamas*, of Render, Kamas & Kelly, of Wichita, argued the cause, and *Stephen M. Joseph*, of Counsel, also of Wichita, was with him on the brief for the appellant.

*Roger Sherwood*, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This action arises out of a collision between an automobile and a motorcycle. The driver of the motorcycle, Leslie B. Warren, died as the result of the accident. The administratirix of his estate, his divorced wife, has sued the driver of the automobile, the present defendant. A verdict was rendered in the defendant's favor and the plaintiff has appealed. In this opinion we shall refer to the parties as plaintiff and defendant, respectively.

The locale of the fatal collision was a four lane east-west thoroughfare known as Central Street which carries U. S. Highway 54 through the City of El Dorado. The time was approximately 7 p. m., September 13, 1971, and the sun hung low in the western sky. The defendant was headed west facing into the sun. She was on her way to procure a succulent pizza from the Pizza Hut on the opposite or south side of Central Street.

Intending to make a left turn across the street into the driveway leading to the Pizza Hut, the defendant stopped her automobile to let an east bound car pass in front of her. She then proceeded in a southerly direction across Central Street to a point where Mr. Warren's motorcycle struck the right front fender of her car. The defendant candidly concedes her vision was affected by the brilliance of the setting sun and that she did not see the decedent's motorcycle until after her car was struck.

Special interrogatories were submitted to the jury at the close of the trial and the jury found that both parties to the accident were negligent: the defendant in failing to keep a proper lookout and the decedent in failing to stop, slow or swerve to avoid the accident. The plaintiff challenges the jury's finding of negligence with respect to her decedent as being unsupported by any competent evidence and this contention, in essence, forms the basis of her first point of error, although it is phrased in various ways. Interwoven with this contention, and as an integral part of the same, the plaintiff argues that a hypothetical question propounded on cross-examination to one of her witnesses, a city police officer by the name of Wright, and the officer's response thereto were improperly admitted.

It now behooves us to take a look at the evidence. As we have already indicated, the defendant testified that her vision was impaired by the sun and that she did not see the motorcycle. She testified further that her speed from the time she started to drive across the east bound lanes of Central Street to the pizza place was from three to five miles an hour; that her car had a gearshift and she had shifted into low gear. According to Mr. Wright, the investigating officer, Central Street at this location was forty-eight feet wide, with each of the four traffic lanes being twelve feet in width; that the point of impact was five feet north of the south curb line of the street; and that there were no skid marks left either by the car or by the motorcycle.

On cross-examination by the defendant, Officer Wright testified as to his experience, schooling and training in the area of accident investigation. He testified that the distance traveled by the defendant after she started her turn across the street was at least 20 feet; that at a speed of 5 miles per hour, the highest speed to which the defendant testified, a vehicle travels 7 feet per second and that it would thus have taken the defendant approximately 3 seconds after commencing her turn to reach the point of impact. The officer further testified that the speed limit on Central was 35 miles per hour; that at this speed a car travels 52 feet per second; that assuming the decedent was traveling at the 35 mile speed limit he would have traveled 156 feet within 3 seconds; that at 35 miles per hour a vehicle would be able to stop within 90 feet if its brakes were passable according to state law (K. S. A. 1972 Supp. 8-5,101 [b] [1]); that the reaction time of a driver from perception of danger to application of brakes is three-fourths of a second; that at 35 miles per hour a car would travel approximately 35 feet during the three-fourths second reaction time; and that the total stopping distance for a vehicle traveling within the 35 mile speed limit would thus have been approximately 125 feet (90 plus 35).

At this point, over the plaintiff's objection, the following question was asked and answer was given:

"Q. All right. Assuming the speeds that we have given you, and assuming the brakes were applied upon perceiving the danger of a car turning left, and assuming that the brakes were passable as required by state law, could the motorcycle driver have stopped within the time of the speeds that I have given you?

"A. Yes."

It is true there was no direct evidence bearing on the subject of the care exercised by the decedent for he, of course, was not present to testify; the defendant did not observe him until the moment of impact; and the other eyewitness to the accident did not see him until a split second before the collision. It does not necessarily follow, however, that there was no evidence relating to contributory negligence on the part of the decedent or that the trial court erred in submitting that issue to the jury.

This court has said on more than one occasion that negligence, or contributory negligence, as the case may be, can be established by circumstantial evidence, and that the physical facts concerning an accident may be so clear as to enable a jury to form a judgment as

to how the accident happened and who was at fault, even though there may be no eyewitness account of the accident. (*In re Estate of Storer*, 191 Kan. 645, 648, 383 P. 2d 956; *Briggs v. Burk*, 174 Kan. 440, 257 P. 2d 164; *Sawhill v. Casualty Reciprocal Exchange*, 152 Kan. 735, 107 P. 2d 770.) This rule is succinctly stated in the case of *In re Estate of Roth*, 191 Kan. 493, 382 P. 2d 320, where the drivers of both cars were killed and there were no other eyewitnesses to the accident:

"In a case such as the one at bar, when there are no eye witnesses, the appellee is entitled to prove her case and rely upon circumstancial evidence and the physical facts of the collision. . . . " (p. 498.)

A situation much like the case at bar formed the basis for the lawsuit in *Prior v. Best Cabs, Inc.*, 199 Kan. 77, 427 P. 2d 481, where a taxicab and a motorcycle came together at a protected intersection at which the cyclist had the right of way. The plaintiff motorcycle driver was suffering from amnesia and was unable to testify as to the facts of the accident or as to his care or lack thereof. There was evidence that the taxicab was proceeding into the intersection, after having come to a stop, at a speed of ten miles per hour; that the motorcyclist was traveling twenty-five miles per hour; and that his motorcycle left no visible skid marks. In upholding a verdict in favor of the cab company, this court said the evidence was sufficient to rebut any presumption of due care on the plaintiff's part and to make the matter of his contributory negligence a question for the jury.

In the case before us there was evidence that no skid marks were left by the motorcycle, a circumstance which would justify an inference that the deceased had not applied his brakes. In addition to that evidence there was testimony by the El Dorado police officer, whom we believe was shown sufficiently qualified to testify as an expert and to express an opinion, that assuming the decedent was going within the 35 mile per hour speed limit and that his brakes met state requirements, he could have stopped if he had applied his brakes. We believe the question was properly conditioned on the assumptions that the decedent was neither exceeding the legal speed limit nor violating the statutory requirements relating to brakes, and the plaintiff does not seriously contend otherwise. A person is presumed to intend obedience to and compliance with the provisions of the law. (31A C. J. S., Evidence, § 134, pp. 275-279.) In *Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 658, 481 P. 2d

980, we said that a motorist may assume that other motorists will observe the laws and regulations which govern traffic.

The plaintiff has pointed out, however, that there was no evidence as to how fast the decedent was going and no evidence that his speed was 35 miles per hour, that being the speed which Officer Wright used in making his computations and forming his expert opinion. The plaintiff makes the observation that the legal speed limit ranged from 0 to 35 miles per hour. We will assume this is correct (although a zero speed for a motorcycle would be somewhat unusual), but even so the plaintiff would not be profited. So far as we can understand, braking distances will decrease as speed lessens but the ratio between the two will remain comparatively constant. Accordingly, the officer's testimony that the decedent could have stopped had he been driving within the speed limit appears sound in concept.

Where the circumstances which surround an occurrence are such that a reasonable inference of negligence may be drawn therefrom according to the common experience of mankind, the issue of negligence should be submitted to the finder of the facts, which in this case was the jury. It then becomes the function of the factfinder to sift and weigh the evidence and to draw such reasonable inferences therefrom as may be deduced. (*Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 431 P. 2d 518.) We find no error in the trial court's action submitting the issue of contributory negligence to the jury under the facts of this case.

What we have said with respect to the points raised by plaintiff on the issues of contributory negligence and the admission of evidence will dispose of this appeal, since her other claim of error relates solely to the question of damages. A question pertaining to damage becomes moot once the issue of liability has been determined and for this reason we must respectfully decline to discuss it.

The judgment is affirmed.